IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CHARLES KEENER )
)
v. ) No. 1:11-0106
) Judge Nixon/Bryant
SOCIAL SECURITY ADMINISTRATION )

To: The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for supplemental security income, as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 17), to which defendant has responded (Docket Entry No. 25). Plaintiff has further filed a reply in support of his motion. (Docket Entry No. 26) Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 8),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff's benefits application was filed on February 26, 2009, but was given a

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

protective filing date of February 12, 2009. (Tr. 114, 141) Plaintiff alleged disability since August 31, 2006, due to, e.g., arthritis in his hands. (Tr. 131) His application was denied at the initial and reconsideration stages of agency review (Tr. 53, 58), whereupon plaintiff requested *de novo* hearing of his claim by an Administrative Law Judge (ALJ). The hearing before the ALJ was held on February 22, 2011, and plaintiff appeared with counsel and gave testimony. (Tr. 24-46) Testimony was also given by an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement, until March 1, 2011, when he issued a written decision in which plaintiff was found to be not disabled. (Tr. 10-23) That decision contains the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since February 12, 2009, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: Osteoarthritis; Residual Effects, partial amputation of long finger on right hand (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, and can stand and/or walk for about six hours and sit for about six hours, all with normal breaks, consistent with the performance of light work as defined in 20 CFR 416.967(b), except as follows: The claimant is limited to jobs that require no more than frequent pushing or pulling, with no more than occasional fingering with the right upper extremity. He is further limited to jobs requiring no more than frequent posturals of climbing, balancing, stooping, crouching, kneeling, or crawling (except no climbing of ladders, ropes or scaffolds).

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on August 22, 1957 and was 51 years old, or a person

7.     who is closely approaching advanced age, as of the date the application was filed (20 CFR 416.963).

7.     The claimant has a marginal education and is able to communicate in English (20 CFR 416.964).

8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since February 12, 2009, the date the application was filed (20 CFR 416.920(g)).

(Tr. 15-16, 18-20)

On October 27, 2011, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The lean medical record in this case is comprised of four pages of treatment notes from Dr. David Magas (Tr. 185-88) -- whose treatment of plaintiff's injured hands predates the period relevant to the disability inquiry by a decade or more, and thus is of

3

historical value only -- and the examination report of consultative examiner Dr. Clarke Woodfin, Jr. (Tr. 189-91), along with the assessments of nonexamining consultants Dr. John L. Humphreys (Tr. 192-95), Dr. Lina B. Caldwell (Tr. 196-204), and Dr. Carolyn M. Parrish (Tr. 205-08). Plaintiff apparently failed to appear, on two occasions, for what would have been his second consultative examination. (Tr. 58)

Plaintiff's allegations of error focus primarily on the findings of Dr. Woodfin. Dr. Woodfin conducted an all-systems examination on April 30, 2009, but only the following findings related to plaintiff's upper extremities are pertinent here.[2] In relating plaintiff's medical history as reported by plaintiff, Dr. Woodfin noted:

> **Problem #1: Arthritis in Hands.** This was diagnosed 15 years ago by Dr. Magus of Collinwood, Tennessee; type is unknown to the claimant. His grip is weak and he can't hold a pencil. The right long finger is amputated just proximal to the proximal IP joint. The left small finger was fractured 4 years ago. He can't grip a fork with either hand, can't crack an egg, has difficulty tying his shoes and zipping his pants.
>
> . . .
>
> **General Appearance**: . . .[He] [m]oves about the room without apparent physical limitation and gets on the examining table without difficulty. This is a pain-free examination, by all appearances.
>
> **Musculoskeletal & Extremities**: . . .Upper extremities and lower extremities are unremarkable to inspection and palpation except as below. There is no cyanosis, clubbing, edema, deformity, stasis or varicosity.

---

[2]As plaintiff notes, for purposes of understanding these examination results, "The MCP (metacarpophalangeal) is the first finger joint (better known as a "knuckle"). The Proximal IP (proximal interphalangeal) is the second or middle joint on a finger. The DIP (distal interphalangeal) is the last or outermost joint on a finger. Flexion, in regard to fingers, refers to the act of bending the fingers into a fist. Extension is the opposite of flexion. It describes the ability to extend a finger outward to be parallel with the flat palm." (Docket Entry No. 18 at 3 n.1)

Arthritic changes are noted in the hands, e.g., edema, increased temperature, tenderness, and a few Heberden's nodes. There is no ulnar deviation or synovitis. There is slight enlargement of all DIP and PIP joints. Good dorsalis pedis and posterior tibial pulses.

### Ranges of Motion

Shoulders & Upper Extremities: ROM is full without apparent discomfort except for the hands which are as follows:

**Right Hand**: Thumb full.
Proximal IP #2 – 30-degree loss of extension, full flexion
Proximal IP #3 – surgically absent
Proximal IP #4 – 30-degree loss of extension, full flexion
Proximal IP #5 – 30-degree loss of extension, full flexion
DIP #'s 3, 4 & 5 – Full extension and flexion
All MCP's are full on the right.

**Left Hand**: Thumb full.
Proximal IP #2 – Full flexion & extension
Proximal IP #3 – Full flexion & extension
Proximal IP #4 – Full flexion & extension
Proximal IP #5 – 90-degree loss of extension, full flexion
All MCP's are full on the left.

DIP #2 – Full flexion & extension.
DIP #3 – Full extension, 20-degree loss of flexion
DIP #4 – Full extension, 60 degrees flexion
DIP #5 – Full extension & flexion.

. . .

**Neurological**: Romberg is negative, sensorium is clear, the claimant hears well, speech is unremarkable. Motor strength is 5/5 in the shoulder girdles, triceps, biceps, wrist flexors, <u>pinch</u>, <u>grip</u>, quadriceps, hamstrings and ankle flexors, without apparent discomfort anywhere. DTR's are 0 to 1+ and symmetrical. CN's II-XII are intact; manual dexterity is normal on opposing thumbs to fingertips.

IMPRESSION

1. Osteoarthritis of hands.
2. Amputation, partial, right long finger.
3. Possible true essential hypertension.

SUMMARY

The claimant has little difficulty with zippers. There is no difficulty picking up a coffee cup. I am sorry but this building has no doorknobs, only levers. There is no difficulty turning lamp switches on and off. His fingernails are short.

The administrative record also contains opinions from nonexamining physicians. As pertinent to the issues raised by plaintiff, Dr. Lina B. Caldwell reviewed the medical evidence and opined that plaintiff could perform light exertional work with some limitations in his upper extremities, such as frequent pushing and pulling with his right upper extremity; never climbing ladders, ropes, or scaffolding; and occasional fingering with this right hand and unlimited fingering with his left hand. (Tr. 196-201) In light of the medical evidence, Dr. Caldwell also opined that plaintiff's statements about his pain were not fully credible. (Tr. 201)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
> 4) A claimant who can perform work that he has done in the past will not be

> found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

<u>Cruse v. Comm'r of Soc. Sec.</u>, 502 F.3d 532, 539 (6th Cir. 2007)(<u>citing</u>, <u>e.g.</u>, <u>Combs v. Comm'r of Soc. Sec.</u>, 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. <u>See</u> <u>Wright v. Massanari</u>, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. <u>Id.</u>; <u>see</u> <u>also</u> <u>Moon v. Sullivan</u>, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. <u>See</u> <u>Wright</u>, 321 F.3d at 616 (<u>quoting</u> Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); <u>see also</u> <u>Varley v. Sec'y of Health & Human Servs.</u>, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. <u>See</u> 42 U.S.C. §§ 423(d)(2)(B), (5)(B); <u>Foster v. Bowen</u>, 853 F.2d 483,

8

490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

Plaintiff argues that the ALJ erred in failing to appreciate the functional and vocational significance of Dr. Woodfin's findings regarding the limited range of motion in the fingers of plaintiff's left hand, i.e., that his "left hand is a claw that cannot close." (Docket Entry No. 18 at 5)  However, it is plaintiff's counsel who misapprehends the significance of those findings, by erroneously ascribing the limited range of motion in the *distal* joints of the left middle and ring fingers found by Dr. Woodfin to the proximal joints of those fingers.  Counsel correctly states that the 90-degree loss of extension in the proximal joint of plaintiff's left little finger "means that the first joint from the knuckle on Keener's little finger is permanently locked at a 90° angle." Id. at 4.  However, he incorrectly states that the limitations on flexion in the distal joints of plaintiff's left middle and ring fingers "means that the first joint from the knuckle" on those fingers is at all limited.  It is undisputed that, except for the left little finger, Dr. Woodfin found the proximal joints (closest to the knuckle) of these other fingers to have "[f]ull flexion & extension." (Tr. 191)  The limited range of motion in plaintiff's left distal interphalangeal joints involve the joints closest to his fingertips.  Accordingly, with only his left little finger affected in its proximal joint, and the remaining left hand limitations in two distal finger joints, it is clear that the left hand is not "a claw that cannot close," nor would its functionality stand to be significantly affected.  This conclusion is borne out by the other findings on examination by Dr. Woodfin, as well as by the functional assessment of nonexamining consultant Lina B. Caldwell, M.D. (Tr. 196-204), neither of which indicated any left hand limitations.  The

9

undersigned finds no error in the ALJ's consideration of this uncontroverted medical evidence pertaining to plaintiff's left hand.

Likewise, counsel's argument that plaintiff "is clearly not able to 'finger' with his left hand" (Docket Entry No. 18 at 8) is based on his misunderstanding of Dr. Woodfin's measurements, and not any other medical evidence. Moreover, his argument that "[t]he administrative record contains absolutely no medical evidence that Keener is able to 'finger' with his right hand 'occasionally' (i.e., for up to one third of an eight hour work day)," id. at 9, is simply wrong. "Fingering" is defined for these purposes as "picking, pinching, or otherwise working primarily with the fingers." Soc. Sec. Rul. 85-15, 1985 WL 56857, at *7 (S.S.A. Jan. 1, 1985). Dr. Woodfin reported that plaintiff had full motor strength with pinching and gripping, without apparent discomfort. (Tr. 191) Dr. Caldwell specifically noted these results, as well as normal results observed by Dr. Woodfin in the context of manual dexterity testing and the lack of any apparent difficulty manipulating zippers and lamp switches, or picking up a coffee cup (Tr. 198), before explicitly assessing plaintiff's ability to finger occasionally using his right hand, and without limitation using his left hand. (Tr. 199) Thus, the record clearly contains medical evidence supporting the ALJ's finding of plaintiff's ability to finger occasionally with his right hand.

Finally, plaintiff argues that the ALJ failed to address his testimony that he experienced constant, severe pain in the knuckles of both hands. On the contrary, the ALJ noted that

> In the claimant's prior statements, he alleges [] extreme limitations in the use of his bilateral hands due to multiple past injuries, stating at one point that "only two fingers work right on his right hand," [he] is unable to retrieve

10

> objects, and frequently drops them. During testimony, he went on to say that he takes a lengthy period to tie his shoes, and that he is unable to button or zip his pants. He also alleges ongoing upper extremity pain.
>
> * * *
>
> This brings us again to the consultative evaluation report of Dr. Woodfin. There was some additional history that was brought out, in that the claimant's osteoarthritis was diagnosed in the 1990's by Dr. Magas, and that he also injured his left small finger in another incident that happened circa 2005. The physical exam did reveal a number of range of motion limitations in the bilateral hands, but they mostly involved the proximal interphalangeal joints, and then mainly as to extension. [Specifically, both thumbs and all metacarpophalangeal joints (i.e., knuckles) had a full range of motion. . . .] He also noted the presence of arthritic changes in the hands, in that there is edema, increased temperature, tenderness, and a few Heberden's nodes, with no ulnar deviation or synovitis, and with slight enlargement of all distal and proximal interphalangeal joints. But as to the cumulative result of this, Dr. Woodfin had the following to say: "The claimant has little difficulty with zippers. There is no difficulty picking up a coffee cup. I am sorry but this building [where the examination was held] has no doorknobs, only levers. There is no difficulty turning lamp switches on and off." There was a full range of motion across the entire musculoskeletal system otherwise, and the balance of the examination was also substantially unremarkable except for the presence of advanced periodontal disease. These objective findings tend to significantly undermine allegations of the kind and variety mentioned above, especially inasmuch as they included the near-total loss of use in both hands.

(Tr. 17-18)

An ALJ's credibility determination is due considerable deference on judicial review, particularly since the ALJ, unlike the Court, has the opportunity to observe the plaintiff while testifying. E.g., Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). The undersigned easily finds substantial evidence supporting that determination here, in light of the above discussion by the ALJ and the extremely limited medical record in this case.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 21st day of April, 2014.

 s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE